Case number 21-1738, Jesse P. Goode appellant versus District of Columbia et al. Mr. Carl for the appellant, Ms. Anderson for the appellees. Morning Mr. Carl. Morning Your Honor. I represent Judge Goode whose section 1983 claims for denial due process for dismissal under Rule 12e6 motion. The appeal this morning focuses on two related issues. Number one, whether or not Laudermill, Matthews, and Goldberg control the court's disposition of this appeal. And secondly, whether the district court's consideration of matters outside the complaint are going to follow the Judge Villard's decision in below ruled that Judge Goode had a property interest in reappointment because of the way the regulations were written, that he had a legitimate expectation of reappointment as an administrative law judge. And if you look at the objective merits, you find that Defendant Adams said things like, I appreciate your thoroughness, professionalism, and your later on he writes, Goode has been professional, thorough, and helpful in all his work and Judge Goode's work product and his timeliness in publishing orders over his last term has been exemplary. For the vile accounts, he's professional, courteous, fair with, but against the representatives who appear before him. So Judge Goode satisfied the objective qualifications for reappointment to the position. Could you address the D.C. Court of Appeals decision of September 23rd in the Barbara Goode Hines cases against the Commission on Selection and Tenure of Administrative Law Judges? Specifically, do you agree that we are bound by the D.C. interpretation of D.C. law? Your Honor, to the extent that it's an issue of D.C. law that's before this court, yes. To the extent that you're bound by, for example, the de facto officer doctrine as interpreted by the D.C. Court of Appeals, this court is not bound. In fact, in Andrade, this court took a very different perspective on the de facto officer doctrine, stating that the court should avoid an interpretation of the de facto officer doctrine that would likely make it impossible for these plaintiffs to bring their assumedly substantial constitutional claim. I want to focus on the procedural due process claim because you don't establish a due process right unless you have a protected property or liberty interest. And doesn't the District of Columbia Court of Appeals decision say that under D.C. law you have no right to appeal whatever and notwithstanding the language of the municipal regulation, and doesn't that eviscerate any property right? Well, as we read the D.C. Court of Appeals decision in light of the due process clause that the District of Columbia cost was required to give Judge Goode due process in making the determination whether or not to reappoint him, the second step of the analysis is whether or not the decision of cost not to reappoint Judge Goode, even though that decision in our view violated Judge Goode's right to procedural due process, that decision itself is not appealable making by making cost the final decision maker. But the issue is that yes, he has a property right that cost denied him his right to procedural due process as interpreted by the cases from this court or by the Supreme Court, and the issue of Judge Goode's right to procedural due process was not before the D.C. Court of Appeals. The narrow issue before which the D.C. Court of Appeals decided the case was whether or not there was... The D.C. Court of Appeals decided that ultimately cost was the final decision maker in that because of the classification as an accepted service employee, et cetera, it was not reviewable in the Superior Court. And so I guess what I'm trying to get at is if that's the case, then how do you have an argument that the law creates some sort of a property interest protectable by due process based on the municipal regulations if you can't even get court review in Superior Court based on those same regulations? The district court below decided that Judge Goode had a property interest, he had a property interest in being reappointed pursuant to the regulations, he was doing his job properly. The written evidence shows that he was doing his job properly. And if we look at the whole history of the, for example, the due process... I want you to focus on the D.C. Court of Appeals decision, counsel, because the district court below did not have the benefit of that decision. And if we're bound by that decision as a matter of interpreting D.C. law, then how can we find that there's a procedural, there's a protected property interest where the D.C. Court of Appeals says that there's no right to review at all? But as we understand the D.C. Court of Appeals decision, the D.C. Court of Appeals is not saying that Judge Goode does not have a property right in reappointment. The D.C. Court of Appeals is saying that the decision of cost is final, it may not be reviewed in the D.C. Superior Court, but that's a different question, a different issue as to whether or not in making the decision as to whether or not to reappoint Judge Goode, whether or not the District of Columbia is bound by the procedural due process provisions of the Amendment of the Constitution. And it's our analysis that there are very strict requirements under the United States Constitution for this process, and one of them is to have a fair opportunity. Mr. Curl, isn't your argument a little bit of a, doesn't it face a little bit of a chicken and egg problem even on its own terms? I take it you're relying on the regulation that says that cost shall reappoint the ALJ if it finds that the ALJ has satisfactorily performed the responsibilities, and it's your position that he satisfactorily performed his responsibilities and that therefore he was entitled to reappointment, and that entitlement is what you point to as creating an expectation of property interest, is that right? Yes, Your Honor. And the difficulty is that what's at issue here is whether he satisfactorily performed the responsibilities, and I take it your position on that is that you would distinguish his performance of the responsibilities of the ALJ role from the kinds of things that are raised in the Adams report, and that those things don't, in your view, go to the heart of the ALJ role. Those are frictions, interpersonal disagreements within the office, is that right? That's correct, Your Honor, and it seems to a large extent to be office politics, and if once these accusations, these charges were made against Judge Good, that he was entitled to an opportunity to respond, he was entitled to full notice. He did have, before the in-person meeting, he did have the Adams report, right? He had it a couple weeks before, it had hundreds of pages of attachments, he wasn't allowed to cross-examine Adams or any of the other people who provided statements against him. Most of it's double hearsay, certainly entitled to no evidentiary value. He was able to read the Adams report, and he was able to give his own version of what occurred in each of those instances, or whether they didn't occur, is that right? Not really, Your Honor, he only had a very limited opportunity to speak, to tell his story, but he was denied the opportunity to, for example, to put on witnesses or to cross-examine any of the people who made the judgment. Judge Good's a white guy. Well, they accused him of racism. Well, his wife's African American. If his wife had been able to testify, I expect she would have testified. No, he's in fact not racist. I didn't see in the record one way or the other. Did he ask to bring any other witnesses other than himself? Yes, he did. He asked for witnesses, he asked for the opportunity to put on witnesses. Where is that in the record? I'd like to find that. I don't remember the precise number of the complaint, but the records that were in there were his attorney in the June of the 17th at the end of June asked for the right to cross-examine and to present witnesses. The response from cost was... Is this after the in-person meeting? Well, this was after Judge Good got a copy of the report with the charges against him. But before the in-person meeting? It was before that meeting and the boss initially took the position and set forth in Judge Adam's letter that in fact Judge Good was not entitled to any sort of procedural due process. Right, I read that he said he wasn't entitled to process, but he also was given some version of process, an in-person opportunity to himself testify and he had counsel and counsel argued. And I'm just interested if there's anything you can point to in the record where he asked before coming to that meeting, he said, I'd like to bring my wife, I'd like to bring, you know, other employees or anyone. And I didn't see that. I did see in the complaint that he said I was denied an opportunity to do that. But I'm wondering if there is, in fact, any affirmative request on his part that we could look to. There was a request to present witnesses and there was a request for all the documents on which that 35-page report replied because it's essentially double hearsay. And in order to find out the truth, you know, certainly in the Anglo-American common law tradition, we rely on cross-examination to get to the truth that he was denied that opportunity. A large part of what Judge Gooden wanted to do was to cross-examine some of these witnesses who were making charges that he was completely unaware of and that were filtered through the staff member who worked for Judge Adams. And all of a sudden it's presented in a report, nearly very little of which Adams had any personal knowledge about. It's the hearsay collected, maybe the gossip in the halls, part of its office politics, part of its dispute. So if you could, maybe when you're posing counsel, if you could point me during rebuttal to where in the record I could find evidence of his request that he wanted to bring witnesses and that that was denied. Yes, that would that would be helpful to me. If there are no further questions, I see that amount of time and, you know, the point I was wanting to get to was that in terms of the... Before you go, if it's okay with Judge Pillard, I have a couple questions. A couple on whether there is a due process right and then one question on if there is a due process right. What's the nature of the impartial decision maker that Good would have been entitled to? So the two questions about whether there is a writer are this. We have a case called Block, B-L-O-C-H, that talks about how if there's unfettered discretion on whether to hire or retain, then there is no property interest. And it says you need to look to the regulations substantive predicates in order to figure out whether there's something other than unfettered discretion. And that's even if a word like shall is in the language. So what would you say were the substantive predicates in D.C.'s regulations that found the decision makers in this case? I think in this case, it's the use of the word shall and the idea that what the council wanted to do was to eliminate office politics and personality disputes and consideration. If you're doing, you meet the objective requirements of your job. So assume I don't think shall gets you all the way there. What are the objective uh guidance what what what what are the limits on the decision makers discretion on the three deciders? Well then you want to have a reasoned decision based on an evidence rather than double hearsay. And that goes to procedure. I'm sorry? That goes to procedure. What what are the the discretion of the deciders here? Well, the goal of the organization is to rationalize the process for deciding administrative appeals. And to the extent that the reliance on gossip or double hearsay undercuts that goal, then I would submit that that's a limitation on the question. And in fact, the statute is fairly clear. You've got to reappoint within 120 days period. And all the writings for Judge Adams say that he should be reappointed. Okay. Okay. What about the D.C. Code 1609.05? And it says, the government mentions this in its brief. Employees in the accepted service do not have any job tenure or protection. Was good in the accepted service? My understanding is that as an administrative law judge, he was in a separate category that was subject to or governed where the conditions or terms for his reappointment were governed by the provision that if you're doing your job right. So your your argument is that he was in the accepted service, but this general statement about the accepted service is sort of preempted by a more specific regulation that you. Precisely. Okay. And then my last question goes to assume that I agree with you that he has a property interest and he's entitled to some version of due process and some kind of an impartial decision maker. I wonder at what point does the decision, do we look to the decision maker's impartiality? This is what I mean. If the decision maker is biased for an arbitrary reason or a reason like race or gender or something completely arbitrary, then we could say, well, that's not an impartial decision. But if the decision maker is partial. Because the decision maker thinks that good was bad at his job. It's conceivable that the decision maker would have formed that opinion before this formal process began, because after all, they've worked with each other for months or years, and it would be odd for a colleague not to form an opinion about another colleague's job performance. So I guess my question is, would you concede that it's not a due process violation if the decision makers here were partial because they had formed opinions about how good did his job, even if those opinions were formed, at least tentatively, before this formal decision making process began? The circumstances here are that Judge Adams had in fact formed an opinion that Judge Good was doing a great job. But Judge Adams wasn't one of the decision makers. He was ex officio presenting, but he wasn't one of the three. He was there. I understand that. I'm just trying to clarify. They were deliberating. I understand. I understand that he was there and that he wrote this long letter, but he wasn't one of the three cost members who could vote on this. Only one of the cost members was actually legitimately on the board. And when you think in terms of the decision making process with the group, when you have somebody in there who's influential... When you say legitimately on the board? Well, under the... Judge Williams' appointment had expired. Oh, right. And the other... There was only one member of cost, and they're exercising this authority to deny... So that's your point, that nobody was validly appointed or authorized because the terms had expired. And so in terms of the mix, well, who's really a decision maker? Who's got the power? And when you have a group process for decision making, I mean, we've all seen this, then there's a give and take, but you can't separate out one member as perhaps inappropriate. All right, Mr. Carl, we've taken you long over your time, but we will give you two minutes for rebuttal. Thank you, Your Honor. We'll hear from Ms. Anderson. Good morning, Your Honor. Stacey Anderson on behalf of the District of Columbia Police. We focused this morning on the due process claim side. I would like to address some of the court's questions that they had for my friend across the aisle. Judge Wilkins, yes, I do believe that the D.C. Court of Appeals opinion does foreclose relief on the property interest claim. The court focused in that case in part on the fact that Mr. Good was within the accepted service, and employees within the accepted service generally don't have job, tenure, and protection. Now, in this case, to be sure, Mr. Good was in a subcategory of a statutory officeholder. That gives him one protection, and that protection is not to be terminated without cause during his tenure. But in this case, we don't have that situation. What we have is him applying for a reappointment, and the statute is clear that reappointment decisions are not the same as removals or discipline. So, as a statutory officeholder, I think the statute is clear, even in that context, that he had no job, tenure, or protection beyond the term of his employment. So, that, I think, is at the heart of whether or not there's a property interest in this case. Beyond that... So, just, I mean, I understand your position. So, if there were an ALJ who had an unblemished record, and everybody conceded that the person was qualified for the job and was doing a great job, on the bench, off the bench, and that person was coming up for renewal, but there was a claim by an anonymous colleague that that judge had assaulted the colleague in the parking lot, it is the district's position that that individual would have no right to any kind of process to challenge that, simply because it's a privilege to be in the job. If the cost, in its wisdom, decided that it wanted to credit that, it could do that. Correct, Your Honor. I mean, again, there's, I guess, two separate questions that play here with what you're asking, two separate points. No, I think, as a matter of due process, because he has no property interest, he would not have a due process protection in that circumstance. But you look at the regulations, and clearly, here, we have set up a regulatory scheme, where there are some protections. He would have a right to, you know, again, respond in writing to the recommendation of the chief ALJ. He would have a right to appear at a meeting before the commission to give his side of the story. So, you know, due process aside, there are some protections here, but the key here is that there's no constitutional violation in this case that would support a 1983 suit against the district. Tell me about your position on the First Amendment claim. I take it that Mr. Good is not claiming speech-related retaliation, but associational retaliation. Is it your view that the threshold issues of public concern, speaking as a citizen on public concern, don't bear on that because it's associational, not speech? How should we think about that? Sure, I think the way you should think about that, Your Honors, is not looking at the label that was given in the complaint. I think you look at what the allegations are here. He really isn't saying that he was terminated simply because he was a member of the union, but rather his allegations focus on his actions and conduct in forming the union or, you know, in advocating for the formation of the union. But if he doesn't argue that his advocacy in that role was a cause, then why should we reach that? Why shouldn't we just look at the associational issue as the only issue that's pressed? But, I mean, again, I don't want to give too much away here, but I think if you do look at the complaint, especially with respect to the principal ALJ position that he objected to, that really is a speech-based claim of retaliation as opposed to simply association. Again, if the court wants to cabin the question to whether or not it or to the issue of whether or not it's simply an associational claim, I think the key to resolving that issue is the fact that he has established causation, and we rely on the Public Employee Relation Board decision as an estoppel, a collateral estoppel to that issue. There, the board squarely considered the question of whether anti-union animus was a motivating factor in Chief ALJ Adams' recommendation not to reappoint and concluded it was not. This was after Mr. Goode had a full and fair opportunity to participate in that litigation. That seems extraordinary to me, that we as a federal court would be stopped by an administrative procedure. Did he have subpoena power? Yeah, I believe so, Your Honor, certainly. Could he appeal that? Yes, they could have appealed that, certainly. Where? It would have gone directly to the Court of Appeals, I believe, if not through the Superior Court, then the Court of Appeals. I apologize for interrupting. No, no, it's okay. But no, he certainly had an appeal right for that, absolutely, Your Honor. And again, at the time that was filed, in July of 2017, Mr. Goode was president of the union, so he had, he was kind of the driving force behind that litigation. So he was in privity with the union at that point, and there's no allegation here that he wasn't adequately represented by the union. But getting back to your question, Judge Pillard, so the D.C. Court of Appeals would give that preclusive effect, and it meets the standard that a federal court would give an D.C. Court of Appeals, which would give it preclusive effect. No, no, I'm saying in another case, this administrative decision would have preclusive effect, for example, in the civil suit in the Superior Court. In other words, this decision meets the criteria for giving an administrative decision preclusive effect. And because the D.C. Court of Appeals would give it preclusive effect, this court, I think, is bound to as well. Do we have to go there? I mean, why don't we just look at the complaint and ask whether it states a First Amendment claim? Certainly. Looking at the complaint, Your Honor, I think... And what would be your best position on why it doesn't? Again, I don't think he's alleged facts that establish beyond the preclusive effect of the decision. He hasn't alleged facts that establish causation. I mean, if you look at whether or not there was an inference of retaliation based on his union membership, we could look at the history of Chief Judge Adams' relationship with Mr. Goode in terms of the fact that he gave him very good employment evaluations, the fact that he promoted him during his tenure. And this was all after Mr. Goode had been an active member in the union. So that's inconsistent with the notion that now, all of a sudden, we're going to retaliate for his union membership and deny his reappointment. What about retaliation? If your characterization, rather than Mr. Goode's, is accepted that it's in response to not just his union membership and his claim that there should be process on the but that he was opposed, he continued to be opposed to the establishment of that principal position and that the timing of the Adams letter, that often when we're looking at the pleading stage at causation, we look at things like temporal proximity. And how would you respond to whether this complaint, if construed to raise a speech claim, nonetheless doesn't state a claim of retaliation because there's no causation given the temporal proximity? I agree that the temporal proximity is certainly close, although I think it's outside of the bound, on the outer bounds of that two to three month window that we often look at in these cases. But I do, again, think Wasn't it also simultaneous? The ultimate recommendation didn't come down until June. But it was ongoing during this period. So I take your Honor's point. But again, I think looking at the allegations in the complaint, again, it's just not enough to state a plausible claim of retaliation. And assuming it's speech-based, then there is a threshold question about speaking as a citizen on a matter of public concern. And what's your best authority that it's not speaking as a citizen on a matter of public concern? Certainly. I would turn to the OAH Establishment Act, which puts squarely within the realm of responsibilities for an administrative law judge to weigh in on management decisions, even where in the area of personnel matters. So it was within his job requirements to express opinions about the creation of this new position. And so I would say that he was not speaking as a citizen in that context, but that it was within the scope of his employment as part of his duties. Beyond that, I also question whether this is an issue of public concern. It's a single position within a large administrative agency. It deals with the personnel matter. And again, I'm not clear for the record the objections, whether it was to the fact that it was ALJ Yoner that was being named to the position or the position itself. So, you know, all of those things, though, are not within the realm of general public interest. And so I would say that neither of those requirements are satisfied with respect to the speech-related First Amendment claim. And then, Judge Pillard, I just wanted to address one question that you had asked about whether or not Mr. Good was denied the opportunity to call witnesses. They say in our reply brief that we've conceded that point. And I just want to make clear the district's position. What I've conceded is the complaint alleges that he was not allowed to call witnesses and cross-examine witnesses, as we must deal with this stage of 12B6 dismissal. But as a matter of fact, having reviewed the administrative record and having handled the administrative appeal myself, the district does not concede the question of whether or not he called or requested to call to cross-examine witnesses, nor do we concede that he asked that the commission make available certain witnesses for questioning. And I don't believe you'll find in the record, Your Honor, in this case where that's conclusively resolved. But I just want to be clear, the district does not concede that point. If Your Honors have no further questions, we would ask the Court affirm. Thank you. Thank you. Mr. Carl, you have, if you would like them, you have two minutes for rebuttal. With respect to Your Honor's request for citations, the citations that we rely on are in the amended complaint 116 and I guess through 123 and then 137 on the question of what requests were made for, you know, for additional due process rights, the right to present witnesses. And, you know, there was also a citation in the amended complaint that Judge Adams said, no, you're not entitled to any procedural due process right off the bat. So that was their initial position. If I may speak briefly to the question of the collateral estoppel, there are two parts to the PIRB decision. And what was presented, introduced into the district court was the final decision, but not the hearing examiner's decision. But the point is, first of all, that Judge Good won a part of the PIRB hearing, and he won the part that says that costs engaged in an unfair labor practice. And so if we're looking at collateral estoppel, then that would be certainly an issue too. Right. We're aware of that. But your position is that this is not speech based as such. It's not subject to the speaking as a member of the public on a matter of public concern. It's an associational. That's right, Your Honor. And what the district has done in their arguments is they've tried to take what is Judge Good's union advocacy, his objections to the preselection of a specific candidate, his objections to the violation of the collective bargaining agreement, and they're trying to turn that into unprotected speech. And if you take the district's argument to its logical conclusion, then no speech is going to be protected by the First Amendment. I'm sorry, his substantive objection, I know he had a procedural objection at the outset to the creation of the new position because he said that was something that had to be negotiated with the union. And then his substantive objection, as you just said, was to the preselection of the particular candidate that was Judge Yonner. It was the objection to the specific appointment was really a preselection issue that was to the selection of Yonner. The union contract. And was that a union opposition or was that Mr. Good's professional opposition? No, it was a union opposition. The union was opposed to the selection of Judge Yonner. Yes, Your Honor. And so it kind of tied in with that is the discussion he has, Judge Good has, in March and early April of 2017, in which he's told that, well, we might have a pro quo if you back down. All right. We've read the record and we're familiar with that. I don't mean to cut you off, except that we are over time. If there are no further questions, thank you, Your Honor. The case is submitted. Thank you.
judges: Pillard, Wilkins, Walker